**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HORSE TOURS AND TRAVEL SAE,<br>9 El Shaheed Mohamed Gamal Boraie Street<br>Heliopolis, Cairo<br>Arab Republic of Egypt<br><br>*Petitioner,*<br><br>v.<br><br>IRAQI AIRWAYS COMPANY,<br>Baghdad International Airport<br>Baghdad<br>Republic of Iraq<br><br>MINISTRY OF TRANSPORT<br>OF THE REPUBLIC OF IRAQ,<br>Omar Bin Al Khatab Street and Bur Said Street<br>Baghdad<br>Republic of Iraq<br><br>THE REPUBLIC OF IRAQ,<br>c/o Minister of Foreign Affairs<br>Ministry of Foreign Affairs<br>Al-Salhiya, Fadhil Al-Jimali Street<br>Baghdad<br>Republic of Iraq<br><br>*Respondents.* | Case No. _____ |

**PETITION TO RECOGNIZE AND ENFORCE
<u>FOREIGN ARBITRAL AWARD</u>**

Petitioner Horse Tours and Travel SAE, by and through its attorneys, Ifrah

PLLC, respectfully submits this petition to recognize and enforce a foreign arbitral

award against Respondents Iraqi Airways Company, the Ministry of Transport of the

Republic of Iraq, and the Republic of Iraq.

1

## NATURE OF THE PROCEEDING

1.      This is a proceeding to recognize and enforce a foreign arbitral award under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention").

2.      Petitioner Horse Tours and Travel SAE ("Horse Tours") submits this petition to recognize and enforce a July 26, 2023 arbitral award (the "Award") rendered in its favor against Iraqi Airways Company ("Airways") and the Ministry of Transport of the Republic of Iraq by a three-member arbitral tribunal sitting in Cairo, Egypt (the "Tribunal"). A duly certified copy of the Award, with a certified translation thereof, is attached as **Exhibit A** to the accompanying Declaration of Dr. Gamal Aboudeif ("Aboudeif Decl."). The Award directed Respondents Airways and the Ministry of Transport to pay Horse Tours $786,306,177 in damages, with interest, and $1,120,000 in arbitration costs and expenses.

3.      Respondents have exhausted all procedures for challenging the award under Egyptian law. On June 1, 2026, the Egyptian Court of Cassation issued a judgment dismissing Respondents' appeal challenging the arbitral award. A true and correct copy of the Egyptian Court of Cassation certificate dated June 3, 2026, evidencing the dismissal of Respondents' appeal, with a certified translation thereof, is attached as **Exhibit B** to the Aboudeif Declaration.

4.      The arbitration arose out of a general agency agreement dated January 30, 2001, between Horse Tours and Iraqi Airways Co. under which Horse Tours was to serve as Iraqi Airways' exclusive sales agent in Egypt (the "Contract") and an

2

Addendum to the Contract dated March 15, 2001 (the "Addendum"). A duly certified copy of the Contract is attached as **Exhibit C** to the Aboudeif Declaration. A duly certified copy of the Addendum is attached as **Exhibit D** to the Aboudeif Declaration.

5. Article 16 of the Contract provides that disputes concerning the interpretation or application of the Contract would be referred to a three-member arbitral tribunal, consisting of one arbitrator appointed by Horse Tours, one arbitrator appointed by Iraqi Airways, and a chairman to be nominated jointly or if the parties failed to agree, by the IATA Regional Manager. *See* Aboudeif Decl., Ex. B, art. 16. Clause 16 of the Addendum further provides that the Parties would seek to resolve all "disputes that arise between them amicably," and if they could not, that such disputes "shall be resolved by way of an arbitration panel to be agreed upon by both contracting parties." *See* Aboudeif Decl., Ex. C, cl. 16.

6. Airways and the Ministry of Transport have refused to pay any of the amounts due under the Award. Horse Tours therefore brings this action to recognize and enforce the Award against Airways and the Ministry of Transport under the New York Convention and the Federal Arbitration Act. Horse Tours also seeks to recognize and enforce the Award against the Republic of Iraq because the Ministry of Transport is an integral part and political subdivision of the Republic of Iraq, making the Ministry of Transport and the Republic of Iraq jointly and severally liable for the Award.

3

## PARTIES

7.      Petitioner Horse Tours is a joint stock company organized and existing under the laws of Egypt with Commercial Register No. 6656, having its registered office at 9 El Shaheed Mohamed Gamal Boraie Street, Heliopolis, Cairo, Egypt.

8.      Respondent Iraqi Airways Co. is an instrumentality of the Republic of Iraq and a department of the Ministry of Transport, organized and existing under the laws of Iraq with its address at Baghdad International Airport, Baghdad, Iraq.

9.      Respondent Ministry of Transport of the Republic of Iraq is an integral part and political subdivision of the Republic of Iraq, with its headquarters at Omar Bin Al Khatab Street and Bur Said Street, Baghdad, Iraq.

10.     The Republic of Iraq is a foreign sovereign and may be served through its Minister of Foreign Affairs at the Ministry of Foreign Affairs, Al-Salhiya, Fadhil Al-Jimali Street, Baghdad, Iraq.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this petition to recognize and enforce a foreign arbitral award against a foreign sovereign under 9 U.S.C. § 203, 28 U.S.C. § 1330(a), and 28 U.S.C. § 1331.

12.     Respondents are not entitled to sovereign immunity because this is an action to recognize and enforce an arbitral award governed by the New York Convention, a treaty providing for the recognition and enforcement of arbitral awards to which the United States is a party. Accordingly, this matter falls within the

Foreign Sovereign Immunities Act's exception for arbitral enforcement, 28 U.S.C. § 1605(a)(6).

13.    Respondents also are not entitled to sovereign immunity because they impliedly waived their immunity by agreeing to arbitrate this dispute with Horse Tours. Accordingly, this matter falls within the Foreign Sovereign Immunities Act's waiver exception, 28 U.S.C. § 1605(a)(1).

14.    The Court has personal jurisdiction over Respondents under 28 U.S.C. § 1330(b) because Respondents are foreign states within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a); Respondents are not entitled to immunity for the reasons set forth above; and Respondents will be duly served as set forth in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a) and (b).

15.    Venue is proper in this District under 28 U.S.C. § 1391(b)(3), (f)(4) and 9 U.S.C. § 204.

16.    The Petition is timely because Petitioner seeks confirmation of the Award within three years after the Award was made. 9 U.S.C. § 207.

**FACTUAL BACKGROUND**

## I.    THE CONTRACT

17.    This dispute arises out of a January 30, 2001 Contract between Horse Tours and Airways. Under that Contract, Horse Tours agreed to act as Airways' exclusive sales agent in Egypt for cargo and passenger air transportation.

18.    Under the Contract, Horse Tours agreed to, among other things, (a) market and advertise Airways' operations and appointing competent personnel to do

so; (b) provide, repair, and maintain premises for Airways' operations with Egypt; (c) issue passenger tickets, shipping bills, and any other transportation documents and perform related clerical work; (d) promote Airways by vising travel agents and individuals; (e) supply Airways' offices, agents, and subcontractors with appropriate marketing materials. *See* Aboudeif Decl., Ex. A, art. 6.

19.    Later, on March 15, 2001, Horse Tours agreed to undertake additional activities on Airways' behalf, including, among other things, (a) bearing the cost of utility and communication charges for Airways' Cairo office; (b) paying Airways' Cairo office; (c) upgrading, registering, and maintaining certain office and airport vehicles; and (d) providing certain bank guarantees. *See* Aboudeif Decl., Ex. B.

20.    Following the 2003 invasion of Iraq, the Coalition Provisional Authority ("CPA") served as the transitional post-invasion government of Iraq. While in power, the CPA identified certain agreements, but not the Contract, as contracts with "suspected front companies" for the former regime of Saddam Hussein. In June 2004, the CPA transferred power to the Iraqi Interim Government. Later, the Iraqi Interim Government improperly listed Horse Tours as a "front company."

21.    Following the CPA's transfer of power, Airways attempted to terminate the Contract. True and correct copies of Airways' Notices of Termination, with certified translations thereof, are attached as **Exhibit F** to the Aboudeif Declaration.

22.    Airways' first attempt came on December 2, 2004, when Airways issued a notice purporting to terminate the Contract, effective February 1, 2005. Airways' sole basis for the purported termination was that the Contract, entered into under

the prior regime, did not serve Airways' economic objectives. *See* Aboudeif Decl., Ex. F. The December 2004 Notice did not identify any breach on the part of Horse Tours. *See id.*

23. On August 29, 2005, the parties met and agreed to reactivate the Contract, confirming that Horse Tours would remain Airways' exclusive agent in Egypt. A true and correct copy of the Meeting Transcript, with a duly certified translation thereof, is attached to the Aboudeif Declaration as **Exhibit E**. The parties further incorporated the Meeting Transcript into the Contract, overriding any contrary provisions in the Contract. Aboudeif Decl., Ex. E.

24. The Contract, as modified by the Meeting Transcript, established a term of three years from the date of Airways' "actual operation." Aboudeif Decl., Ex. E. The term would renew automatically unless a party provided sixty-days written notice of its intent not to renew. *Id.* Neither party could request termination or non-renewal unless the other party had committed a gross breach. *Id.*

25. In November 2005, just a few months after the parties reactivated the Contract, Airways again purported to terminate the Contract, with an effective date of December 1, 2005. Aboudeif Decl., Ex. F.

26. Two days later, on November 16, 2005, Airways issued a notice purporting to suspend Horse Tours' agency based on alleged non-compliance with the Contract.

## II. THE ARBITRATION

27. Horse Tours commenced the arbitration in 2011, seeking payment of (i) $103,672,853, reflecting expenditures incurred in performing its obligations under

the Contract; (ii) $542,096,579, reflecting lost profits; (iii) $100,000,000 as compensation for Airways' unlawful and arbitrary termination and suspension of the Contract; (iv) $500,000,000 as compensation for reputational and other non-pecuniary harms; (v) interest on all amounts commencing from the date of the filing of the claim until full settlement. *See* Award at 10, 106.[1]

28.    Horse Tours and Airways each nominated an arbitrator to the Tribunal. Because the party-nominated arbitrators could not agree on a president arbitrator, on August 26, 2013, the Cairo Court of Appeal issued a judgment appointing a third arbitrator. *See* Award at 3. Pursuant to that judgment, Dr. Hassan Abdel-Basset Gemei as the third arbitrator on October 12, 2013. *See id.*

29.    Horse Tours submitted its statement of claim, together with supporting evidence, on December 28, 2013. Award at 10. The evidence consisted of, among other things, the Contract, the Appendix, the Meeting Transcript, the various Notices of Termination. Award at 35–26. Horse Tours also submitted accounting and financial records reflecting expenses incurred in connection with the Contract. *See* Award at 36–37. Respondent and the Tribunal were notified of Horse Tours' filing by email and registered mail. *Id.* at 37.

30.    On January 27, 2014, Airways and the Ministry of Transport submitted their response to Horse Tours' statement of claim, along with evidence in support. *See* Award at 39–45, 68–69. Respondents requested that the Tribunal, among other

---

[1] All citations to the Award are to the page numbers appearing in the certified English translation.

things, dismiss Horse Tours' claims and order Horse Tours to pay all arbitration fees and expenses along with Respondents' attorneys' fees. *Id.* at 67–68.

31.     On February 1, 2014, the Tribunal held a hearing in Cairo with all parties present and represented by counsel. Award at 69. During the hearing, Respondents acknowledged receipt of a complete copy of the documents submitted by Horse Tours in support of its claim. *Id.* at 74.

32.     The parties again appeared before the Tribunal for a hearing on April 10, 2014, after which the Tribunal allowed Horse Tours until May 10, 2014 to submit a supplemental memorandum and granted Airways and the Ministry of Transport a period of time to respond to Claimants' submission. *Award* at 89.

33.     Following a February 2023 hearing, the Tribunal appointed an expert to assist the Tribunal in resolving the relationship between the parties, the extent to which each party carried out its contractual obligations, and any damages suffered by Claimant. *See* Award at 131–37. The parties attend three conferences with the expert in March and April 2023. *See id.* 137–38. The expert then submitted his report on May 31, 2023. *Id.* at 135.  The parties submitted closing briefs in June 2023, after which the Tribunal closed the proceedings and reserved the matter for award on July 18, 2023. *Id.* at 141–164, 166.

## III.    THE AWARD

34.     On July 26, 2023, the Tribunal issued a unanimous Award resolving each of Horse Tours' claims and Respondents' defenses.

35.     The Tribunal first rejected Horse Tours' requests for relief against the Prime Minister and the Minister of Finance of Iraq, concluding that Horse Tours did

not follow the procedures required to bring the Prime Minister and Minister of Finance into the arbitration in their official capacities. Award at 212–13.

36.     Next, the Tribunal determined that the termination of the Contract was a deliberate and bad faith breach. Award at 233–34. In reviewing the December 2, 2004 Termination Notice, the Tribunal observed that it failed to identify any breach on the part of Horse Tours or provide any other legitimate basis for termination. *Id.* at 213–14. Supporting this conclusion, the Tribunal observed that the August 2005 Meeting Transcript incorporated into the Contract did not assert or even reference a purported breach by Horse Tours. *Id.* Nevertheless, as the Tribunal concluded, Airways proceeded to repeat its prior willful breach when it issued the November 2005 Termination and Suspension. *Id.* at 214–15.

37.     The Tribunal observed that, unlike in the December 2004 Termination, Airways did attempt to justify the November 2005 Termination. *Id.* at 213–15, 220–21. However, the Tribunal determined that the evidence before it, including evidence of expenses Horse Tours incurred to fulfill its contractual obligations, undermined Airways' purported grounds for termination. *Id.* at 215.

38.     After reviewing the parties' evidence and briefing, the Tribunal concluded that Horse Tours was entitled to compensation for amounts actually expended to comply with its obligations under the Contract and lost profits. *Id.* at 220–22. The Tribunal awarded Horse Tours $94,559,028 as compensation for expenses incurred to carry out its obligations under the Contract and $541,747,149 in lost profits. *Id.* at 221–22.

39.     The Tribunal then turned to Horse Tours' request for damages resulting from reputational and other non-pecuniary harms. *Id.* at 223. It concluded that Respondents had disparaged Horse Tours—including by improperly labeling it a "front company"—and that Respondents' conduct had not only damaged Horse Tours' reputation, but also deprived it of commercial opportunities in Iraq and globally. *Id.* at 224–25. The Tribunal awarded Horse Tours $150,000,000 as compensation for reputational harm and related financial losses. *Id.* at 225.

40.     Finally, the Tribunal ordered Respondents Airways and the Ministry of Transport, as the losing parties, to pay $1,120,000 in arbitration fees and costs. *Id.* at 227–28.

41.     In total, the Tribunal awarded (1) $94,559,028 as compensation for expenses incurred to carry out Horse Tours' obligations under the Contract, with 5% interest from the date Horse Tours filed its statement of claim until full payment; (2) $541,747,149 in lost profits, with 5% interest from the date of the Award until full payment; (3) $150,000,000 as compensation for reputational and non-pecuniary harms, with 5% interest from the date of the Award until full payment; and (4) $1,120,000 in arbitration fees and costs. *Id.* at 228–29.

42.     A claim calculation as of July 24, 2026 is attached as **Exhibit A** to the Declaration of George Calhoun.

43.     To date, Respondents have refused to pay any of the amounts due under the Award.

## GROUNDS FOR ENFORCING THE AWARD

### I.    THE NEW YORK CONVENTION APPLIES TO THE AWARD

11

44.    The New York Convention applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought[.]" New York Convention, art. I(1); *Process and Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 774 (D.C. Cir. 2022). The United States is party to the New York Convention, subject to the reservation that it applies the New York Convention "on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State." Declaration of the United States of America, Sept. 30, 1970, 21 U.S.T. 2566, 751 U.N.T.S. 398. The Award was made in Egypt, *see supra* ¶ 1, which acceded (as the United Arab Republic) to the New York Convention pursuant to Presidential Decree No. 171/1959 dated February 2, 1959. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Done at New York, on 10 June 1958, 330 U.N.T.S. 38 n.1 (United Arab Republic deposited instrument of accession on March 9, 1959).

45.    Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208, implements the New York Convention. *See* 9 U.S.C. § 201 ("The [New York Convention] shall be enforced in United States courts in accordance with this chapter."). The FAA provides that the New York Convention applies to an "arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered commercial, including a transaction, contract, or agreement" unless the relationship is between United States citizens and lacks other significant connections to a foreign state. 9 U.S.C. § 202. The underlying commercial

relationship here is the Contract between Horse Tours and Iraqi Airways, under which Horse Tours and Iraqi Airways agreed to arbitrate disputes concerning the interpretation or application of the Contract. No party to the arbitration is a United States citizen, the arbitral award was made in Egypt under Egyptian law, and the underlying arbitration has no significant connection to the United States.

46.     The New York Convention therefore applies to proceedings before this Court to confirm the Award.

## II.   THE COURT MUST CONFIRM THE AWARD UNDER THE NEW YORK CONVENTION

47.     While, under the New York Convention, courts of the country in which (or under the arbitration law of which) an award was made have "primary jurisdiction" over the award, United States courts have secondary jurisdiction over a foreign award, and as a result lack subject matter jurisdiction to vacate, set aside, or modify foreign awards. *TermRio S.A. E.S.P v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004)) ("Under the Convention, '[o]nly a court in a country with primary jurisdiction over an arbitral award may annul the award.'").

48.     The FAA provides that, in proceedings to confirm a foreign award under the New York Convention, "the court shall confirm the award, unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Article V of the New York Convention sets

out seven narrow grounds for denying confirmation. New York Convention, art. V; *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007).

49. Judicial review of an arbitral award under the New York Convention is limited. *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012). "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court as 'appl[ying] with special force in the field of international commerce,' [] the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 731 (1985)). Accordingly, confirmation proceedings under the New York Convention are "summary in nature." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 369 (D.C. Cir. 2011). A district court "must grant the confirmation unless it finds that the arbitration suffers from one of the defects listed in the Convention." *Id.*

50. The party opposing confirmation bears the burden of proof. New York Convention, art. V; *Mediso Med. Equip. Developing Servs., Ltd. v. Bioscan, Inc.*, 75 F. Supp. 3d 359, 363–64 (D.D.C. 2014). The New York Convention "permits courts to set aside the arbitral award only where the party opposing the award's enforcement submits 'proof' to the court" that one of Article V's seven defenses applies. *Mediso Med. Equip. Developing Servs.*, 75 F. Supp. 3d at 363–64; *see also Zeiler*, 500 F.3d at 164 ("[T]he party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses. . . applies.").

14

51.    "The showing required to avoid summary confirmation is high." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011). Courts will not second-guess the arbitrators' determinations of facts and law, even if they are incorrect. *See id.* The Court does not "sit to hear claims of factual or legal error" in the "same manner that an appeals court would review the decision of a lower court." *Id.* (quoting *Teamsters Local Union No. 61 v. United Parcel Servs., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001)). Accordingly, the Court "must confirm" an award where "some colorable support" for it can be "gleaned from the record." *LaPrade v. Kidder, Peabody & Co., Inc.*, 94 F. Supp. 2d 2, 4 (D.D.C. 2000).

52.    None of the grounds for refusing or deferring confirmation is present here. The Award was the product of a thorough and fair arbitration proceeding, all parties had notice of the proceeding, and the Tribunal gave all parties the opportunity to plead their case, including as to the Tribunal's jurisdiction and authority to resolve the dispute.

53.    The Award is final and binding on the parties. The Egyptian Court of Cassation is the court with primary jurisdiction over the arbitration and the "competent authority" within the meaning of Article V(1)(e) of the New York Convention, and thus the only court with authority to vacate, modify, or set aside the final Award. The Cassation Court dismissed Respondents' challenge, making the Award final and binding. *See* Aboudeif Decl., ¶¶ 1, 3, Ex. B.

54.    United States law recognizes, and encourages, the use of international commercial arbitration and recognition of the Award would not be contrary to any

15

applicable U.S. public policy. *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 69 (D.D.C. 2013) ("The public-policy exception under the New York Convention is construed extremely narrowly and applied 'only where enforcement would violate the forum state's most basic notions of morality and justice.'"), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015).

55.     Respondents therefore cannot meet their heavy burden of proving any defense to confirmation of the Award.

## III.    RECOGNITION AND ENFORCEMENT AGAINST THE REPUBLIC OF IRAQ

56.     The Court should recognize and enforce the Award not just against Airways and the Ministry of Transport, but also against the Republic of Iraq itself. The Ministry of Transport is an integral component of the Republic's government that performs core sovereign and regulatory functions. It is an inseparable part of the Republic itself, not a mere agency or instrumentality. Accordingly, the Republic is jointly and severally liable for the Award as well.

57.     Iraq's Constitution recognizes the Ministry of Transport's fundamentally governmental role. Under Article 76, the Minister of Transportation is a political appointee selected by the Prime Minister. Article 80 provides that the Minister and other members of the Council of Ministers shall "plan and execute the general policy and general plans of the State and oversee the work of the ministries and departments." A translation of the Iraqi Constitution of 2005 is attached as **Exhibit B** to the accompanying Declaration of George R. Calhoun.

16

58.     Iraqi statute is to the same effect. Iraq's Law of Executive Authority (Law No. 50 of 1964) provides that "each Ministry of the Ministries has a legal personality to exercise the rights stipulated in the Civil Code and other Laws and each of them shall be regarded as the meaning of the word 'Government.'" A translation of Law of Executive Authority (Law No. 50 of 1964) is attached as **Exhibit C** to the accompanying Declaration of George R. Calhoun.

59.     Other U.S. courts have concluded that similar Iraqi ministries are inseparable components of the Iraqi government. For example, in *Wye Oak Technology, Inc. v. Republic of Iraq*, No. 1:10-CV-01182, 2019 WL 4044046 (D.D.C. Aug. 27, 2019), *vacated on other grounds*, 24 F.4th 686 (D.C. Cir. 2022), the court held that Iraq's Ministry of Defense was "an integral component of the national government itself," and that "no meaningful distinction can be drawn between [the Ministry of Defense] and Iraq." *Id.* at *20.

60.     Similarly, in *Servaas Inc. v. Republic of Iraq*, 653 F. App'x 22 (2d Cir. 2011), the Second Circuit held that Iraq's Ministry of Industry was an integral component of the Republic. The Ministry was "a political organ of the state," and "no meaningful legal distinction" could be drawn between the Ministry and the Republic. *Id.* at 24. The Ministry performed "a regulatory function" that was "quintessentially governmental." *Id.* at 25.

61.     For the same reasons, the Ministry of Transport is an integral component of the Republic of Iraq. The Republic of Iraq is therefore jointly and severally liable for the Award.

17

## CONCLUSION

62.     For the foregoing reasons, Horse Tours respectfully requests that the Court recognize and enforce the Award in its entirety against Respondents, together with such other and further relief as the Court deems just and proper, and enter judgment against the Respondents accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court enter an order:

a.  granting this petition;

b.  recognizing and enforcing the Award in its entirety against Respondents Iraqi Airways Co., the Ministry of Transport of the Republic of Iraq, and the Republic of Iraq;

c.  directing judgment to be entered in favor of Horse Tours Petitioner in the amount of $ 787,426,177.00, as well as post-award interest as set forth in the award, all such amounts comprising $ 968,644,337.61 on July 24, 2026;

d.  awarding such other fees, costs, and interest as may be recoverable in this proceeding, including post-judgment interest as provided by law; and

e.  granting such other and further relief as the Court may deem just and proper.


Dated: July 24, 2026
        Washington, D.C.          Respectfully submitted,

                                  IFRAH PLLC

18

By:    s/ A. Jeff Ifrah
       A. Jeff Ifrah
       D.C. Bar No. 456661
       Robert W. Ward
       (*pro hac vice* motion forthcoming)
       D.C. Bar No. 90033268
       1717 Pennsylvania Avenue NW, Suite
650
       Washington, D.C. 20006
       Tel: (202) 524-4140
       Fax: (202) 524-4141
       Email: jeff@ifrahlaw.com
              rward@ifrahlaw.com


       *Attorneys for Petitioner*

19