# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **WYE OAK TECHNOLOGY, INC.,** | |
|    **Plaintiff,** | |
|    **v.** | **Civil No. 1:10-cv-01182-RCL** |
| **REPUBLIC OF IRAQ,** | |
|    **Defendant.** | |

**<u>DECLARATION OF DR. ALI KADHUM AZIZ</u>**

I, Dr. Ali Kadhum Aziz, for my declaration pursuant to 28 U.S.C. 1746, state as follows:

1.    I am a lecturer at the College of Law of Baghdad University, Baghdad, Iraq.

2.    My qualifications to provide expert opinion concerning the laws of the Republic of Iraq, inclusive of the meaning and effect of: (i) the Constitution of the Republic of Iraq; (ii) the Law of Executive Authority; and (iii) the Civil Code of the Republic of Iraq, are as follows:

    A.    <u>Education</u>:  In 1965 I earned a Bachelor of Science degree from the College of Law of Baghdad University; in 1981 I earned a Master of Science degree in law from the College of Law, Economics and Science of Aix-Marseille University, Provence, France; in 1986 I earned a Ph.D. in law from College of Law, Economics and Science of Aix-Marseille University, Provence, France.

-1-

EXHIBIT 1

B.      Legal Employment and Professional Activities:

(1)      From March 1987 through July 1988, I was the manager of the legal section of an oil exploration company headquartered in Baghdad, Iraq;

(2)      From July 1988 through August 2003, I was an assistant professor of law in the College of Management and Economy of Al-Mustansiriya University in Baghdad, Iraq;

(3)      From September 2003 through September 2005, I was Assistant Dean for Advanced Studies of the College of Law of Baghdad University, Baghdad, Iraq;

(4)      From September 2005 through November 2009 I was full professor of law in the College of Law, Baghdad University, Baghdad, Iraq, and from September 2005 through December 2011 I simultaneously was Dean of Baghdad University College of Law, Baghdad, Iraq;

(5)      During my tenure as a professor of law, I taught the following courses: Commercial Law; Accounting Principles of Law; Accounting Sources of Obligation; Commercial Documents; Commercial Arbitration; Intellectual Property. During my tenure at Baghdad University College of Law, I supervised 18 graduate students who were awarded Master of Science degrees in law and eight graduate students who were awarded Ph.D. degrees in law by Baghdad University College of Law covering different aspects of Iraqi commercial law.  I lectured to Ph.D. students in law at Baghdad University and other Iraqi law colleges, including on the subjects of international commercial arbitration and intellectual property;

(6)      By invitation of the Ministry of Higher Education of Iraq, I have participated as a legal expert in numerous legal seminars and conferences inside and

EXHIBIT 1

outside of Iraq, inclusive of seminars on the subjects of "Islam, and State and Law in the Iraqi Constitution" (2006, Amman, Jordan), "Iraqi Legal Roundtable for Legislative and Constitutional Affairs (2008, Baghdad, Iraq), "Jurisdiction of the Judiciary in the Iraqi Constitution" (2009, Baghdad), "Conflicts Settlement in International Commercial Contracts (2010, United States);

(7) From December 2006 through December 2011, I simultaneously was the President of the Committee of the Deans of Colleges of Law and Political Sciences in Iraq; and

(8) From December 2011 through the present I have been and continue to be a lecturer of commercial arbitration and intellectual property at the law College of Baghdad University.

3. From my academic and professional involvements, I have expert knowledge concerning the Iraqi Constitution, the body of Iraqi statutory law (inclusive of the Civil Code and the Law of Executive Authority) that bears on the liability of the Ministries of the Republic of Iraq as separate juridical persons from the State of Iraq, as well as the relationship between the Constitution of Iraq and the statutory laws of Iraq.

4. I have been asked by counsel for the Republic of Iraq in the case of *Wye Oak Technologies, Inc. v. Republic of Iraq* to provide a declaration addressing issues that I understand have been raised by Wye Oak Technologies, Inc. ("Wye Oak") in connection with Wye Oak's Motion for Judgment on the Pleadings that the Republic of Iraq is responsible and legally liable to Wye Oak for the claims Wye Oak has made arising out of a contract that Wye Oak alleges Wye Oak entered into with the Ministry of Defense of the Republic of Iraq, based on the conclusions of Wye Oak counsel that:

EXHIBIT 1

(i) the law of Iraq confirms that the Republic of Iraq and the Ministry of Defense "are legally inseparable"; and (ii) Article 219 (1) of the Civil Code of Iraq makes the State of Iraq legally liable for the alleged breach of the purported contract between the Ministry of Defense of Wye Oak.

5.     I have reviewed: Wye Oak's Complaint; Wye Oak's Motion for Judgment on the Pleadings; Wye Oak's Memorandum in Support of Motion for Judgment on the Pleadings; the declaration of Omar Ghassan Jamil Al-Wiswasi in support of Iraq's Motion to Dismiss the Complaint (docket entry # 29-1 of the U.S. District Court of the Eastern District of Virginia) (the "Al-Wiswasi Declaration"); and the expert legal opinion of Dr. Abdel Hamid Alahdab presented to the International Court of Arbitration of the International Chamber of Commerce in the case of the Greek Powder and Cartridge Co. S.A. (Greece) vs. the Ministry of Defence (Iraq) (Case No. 7094/CK/AER/ACS) (the "Dr. Alahdab Expert Opinion") (appended to this declaration at Exhibit 1).

**Scope of Declaration and Summary of Opinions**

6.     I have analyzed the opinions and conclusions presented by legal counsel by Wye Oak in Wye Oak's Memorandum in Support of Judgment on the Pleadings (the "Wye Oak Memorandum") that provisions of the Iraqi Constitution and Article 219 (1) of the Civil Code of Iraq makes the State of Iraq liable for the claims stated by Wye Oak in the Complaint, all of which arise from alleged breach by the Ministry of Defense of contract that Wye Oak alleges existed between Wye Oak and the Ministry of Defense.  I observe that the opinions and conclusions of Wye Oak counsel are made without the benefit of legal analysis of Iraqi law by anyone who is shown to be qualified to read or interpret Iraqi law.  It is my opinion that such opinions and conclusions contained in the

-4-

EXHIBIT 1

Wye Oak Memorandum are incorrect due to the failure of Wye Oak counsel to consider all Iraqi laws applicable to this issue and to Wye Oak counsel's lack of knowledge as well as incorrect reading of Iraqi laws applicable.

7.      Accordingly, I disagree with the opinions set forth in the Wye Oak Memorandum, including: (i) those ultimate conclusion set forth at pages 9-11 of the Wye Oak Memorandum that the Republic of Iraq and the law of Iraq confirms that the Republic of Iraq and the Ministry of Defense "are legally inseparable"; and (ii) the ultimate conclusion set forth at pages 11-12 of the Wye Oak Memorandum that Article 219 (1) of the Civil Code of Iraq makes the State of Iraq legally liable for the alleged breach of the purported contract between the Ministry of Defense of Wye Oak.

**The Constitution of Iraq Does Not Alter the Identity of the State of Iraq as a Separate Juridical Person from the Ministry of Defense that Is Not Liable for Acts of the Ministry of Defense that Are Alleged to Constitute Breaches of Contract**

8.      Wye Oak counsels' assumption that the Constitution of Iraq alters or overrides the Law of Executive Authority No. (50) 1964 ("Law of Executive Authority") which provides that the State of Iraq and the Ministry of Defense each are separate juridical persons that are not liable to any party for the other's contractual obligations or acts, including without limitation any act by the Ministry of Defense that is alleged to constitute breach of contract entered into by the Ministry of Defense is based on an erroneous reading and understanding of the Constitution of Iraq generally as well as, in particular, an erroneous reading and understanding of Articles 66, 78, 80 and 110 of the Constitution of Iraq.

9.      The legal structure of the State of Iraq and the Ministries of the Government of Iraq is established by legislative act of the Parliament of Iraq in enacting the Law of Executive Authority in 1964.  The Law of Executive Authority has been in

-5-

EXHIBIT 1

Case 1:10-cv-01182-RCL   Document 105-1   Filed 06/06/14   Page 6 of 43

force and effect continuously since 1964.  The current Constitution of Iraq was drafted by the Constitutional Committee of the Parliament of Iraq in 2005 and came into force and effect upon passage in a popular referendum in October 2005.  At no time during drafting or approval of the Constitution of Iraq (or thereafter) was the Constitution considered by the Parliament of Iraq or any court in Iraq to be in conflict with or supplant the Law of Executive Authority. On the contrary the constitution of Iraq expressly confirms the validity of all existing laws unless annulled or amended in accordance with the provisions of the Constitution.  See Article 130 of Iraqi Constitution, which states as follows:

Article 130

Existing laws shall remain in force, unless annulled or amended in accordance with the provisions of this Constitution.

(I append a true and correct English language translation of Article 130 of the Iraqi Constitution at Exhibit 2 to this declaration.) Accordingly, it necessarily follows that the provisions of Law of Executive Authority No. (50) of 1964 remain in full force and validity because the law has not been annulled or amended.

10.     I have carefully examined the Al-Wiswasi Declaration.  The expert legal conclusions presented in the Al-Wiswasi Declaration that the State of Iraq is a separate juridical person from the Ministry of Defense and that the State of Iraq is not liable for the contractual obligations of the Ministry of Defense (inclusive of any alleged breach of contract by virtue of any act of the Ministry of Defense) correctly states Iraqi laws status which is based on the separation of the legal personality of the state (the Government) and the ministries including the ministry of defense and the application of paragraph two, Article 1 of the Law of Executive Authority No. (50) 1964 which clearly refers that

-6-

EXHIBIT 1

Case 1:10-cv-01182-RCL   Document 105-1   Filed 06/06/14   Page 7 of 43

Council of Ministers and each Ministry is a separate juridical persons having all rights contained in the Civil Code and other laws. It is worth mentioning that the Iraqi Civil Code, Law No. 40 of 1951, has set out in Article 47 (Juridical Persons), Section 2, Chapter 2 the following:

> The juristic [juridical] persons are:
>
> (a) The State.
>
> (b) The administrations and the public institutions which by virtue of the law are granted a juristic personality independent of the State's personality in accordance with the conditions laid down herein.
>
> (c) The districts, municipalities, and villages which are granted by the law a juristic personality in accordance with the conditions laid down therein.
>
> (d) Religious sects (denominations) which the law grants a juristic personality in accordance with the conditions laid down therein.
>
> (e) Dedications (waqfs).
>
> (f) Commercial and civil companies except those of which have been excluded by a provision in the law.
>
> (g) Societies which have been incorporated in accordance with the provisions of the law.
>
> (h) Every group of persons or combination of property which is granted a juristic personality by the law.

EXHIBIT 1

Case 1:10-cv-01182-RCL   Document 105-1   Filed 06/06/14   Page 8 of 43

Also the Civil Code has stipulated in Article 48 the following:

<u>Article 48</u>

(1)    Every juristic person shall have a representative to express its wish.

(2)    A juristic person shall enjoy all rights other than those inherent in the nature of the natural person to the extent determined in the law.

(3)    A juristic person has its own patrimonium.

(4)    A juristic person has the capacity of payment within the limits set down in its deed of incorporation and which are prescribed in the law.

(5)    A juristic person has the right of litigation.

(6)    A juristic person has a domicile which is deemed to be in the place wherein lies its head office (administrative center); for the companies which have their head offices abroad and have business in Iraq, their head office in regard to the bylaws will be deemed to be the place wherein lies its business management in Iraq.

(I append a true and correct English language translation of Articles 47 and 48 of the Civil Code at Exhibit 2 to this declaration.)

11.    I also have carefully examined the Dr. Al-Ahdab Expert Opinion, inclusive of:

A.    The concept of the State under Iraqi law (pp. 4-5 of the Dr. Al-Ahdab Expert Opinion);

-8-

EXHIBIT 1

B.      The concept of the Ministry under Iraq law (pp. 6-9 of the Dr. Al-Ahdab Expert Opinion);

C.      The relation between the State and the Greek Powder claim (pp.9-12 of the Dr. Al-Ahdab Expert Opinion); and

D.      The following conclusions stated at pp. 12-14 of the Dr. Al-Ahdab Expert Opinion: the legal status of the Ministry of Defense (Conclusion No. I); the outcome of arbitration proceedings against the Ministry of Defense is not binding upon State of Iraq (Conclusion No. II); the State is not liable for contracts entered into by the Ministries (Conclusion No. III); it is not possible to file a lawsuit against the State if the contract was signed with the Ministry (Conclusion No. IV); the State has the right to be domiciled within one of the Ministries, and that the legal consequences of such domicile do not extend to the State becoming liable for the Ministry of Defense's alleged breach of contract.

12.      It is my opinion that the Dr. Al-Ahdab Expert Opinion still accurately states Iraqi Law on all matters discussed therein, and that the adoption of the current Constitution of Iraq did nothing to change such law for the reasons clearly dealt with in paragraph 9 of this declaration, above.

13.      I am also of the opinion that, for the same reasons stated in the Dr. Al-Ahdab Expert Opinion, that:

A.      The Ministry of Defense is a separate juridical person from the State of Iraq in accordance with the provisions of the constitution and the prevailing laws in Iraq;

EXHIBIT 1

B.  The State of Iraq is not responsible or liable for the contractual acts of the Ministry of Defense with respect to the alleged contract between Wye Oak and the Ministry of Defense, nor for any other Ministries, due to the fact that the State of Iraq is a separate juridical entity in accordance with Iraqi laws, as stated above; and

C.  Iraqi law does not permit, and therefore, it is not possible, for Wye Oak to file a lawsuit against the State for alleged breach of the contract signed by the Ministry of Defense or any other ministries.

**The Acts for Which Article 219 (1) Makes the Republic of Iraq Liable are Solely Those Acts that Constitute Torts (i.e., Personal Injury Under Iraqi Law) and Not Acts that Are Alleged to Constitute Breach of Contract**

14.  Wye Oak counsel's assumption that Article 219 (1) of the Civil Code is applicable to claims constituting an alleged breach of contract is based on a selective and clearly erroneous reading of Article 219 (1) in isolation from any other provision of the Civil Code.

15.  By its express term, read in the context of the entirety of the Iraq Civil Code, Article 219(1) does not make the State of Iraq liable for any act that constitutes breach of contract by the Ministry of Defense.

16.  The Iraqi Civil Code has dealt with unlawful acts against property as stipulated under Articles 186- 201. Also the Iraqi Civil Code has dealt with unlawful acts committed against persons as stipulated under Articles 202-203, and also under the title of Common Provisions of Unlawful Acts as stated in Articles 204-217.  Under Section 2 of Chapter 3 of the Civil Code, the Civil Code has dealt with responsibility for acts of a third party and things as stipulated in Articles 218-220 as follows:

EXHIBIT 1

Case 1:10-cv-01182-RCL   Document 105-1   Filed 06/06/14   Page 11 of 43

Article 218

(1)     The father and then the grandfather shall be obligated to compensate the injury caused by a minor.

(2)     The father or the grandfather will be able to waive his responsibility if he has established that he had exercised the duty of control (over the minor) or that the injury would have taken place even where he had performed said duty.

Article 219

(1)     Government municipalities and other institutions which perform a public service as well as every person who exploits an industrial or commercial enterprise are responsible for the damage (injury) caused by their employees if the injury resulted from an encroachment committed by them in the course of their service.

(2)     The employer will be able to relieve himself of the responsibility if he establishes that he had exercised the necessary care to prevent the injury or that the injury would have happened had he exercised the necessary care (caution).

As expressly stated above in article 219 (1) it clearly defines and sets forth the controlling Iraqi law for finding that the state of Iraq is liable to an injured party for injury caused by acts of tort (*i.e.*, acts of negligence that cause harm to another such as traffic accident, intentional acts cause personal injury or property damage as assault and murder). By its term article 219 (1) of the Civil Code applies only in the circumstances of such an act of tort committed by an employee of a government, municipalities other institutions and

-11-

EXHIBIT 1

persons. (I append a true and correct English language translation of Articles 186- 201, Articles 202-203, Articles 204-217 and Articles 218-220 of the Civil Code at Exhibit 2 to this declaration.)

17.     In Iraqi law, claims for breach of contract are separate and distinct from tort claims, and must be brought and maintained solely as breach of contract claims and not as tort claims. Contracts claims must be made in accordance with Articles 168 – 176 of the Civil Code. (Articles 168-176 of the Civil Code, Contractual Liability (Warranty of the Contract) are set forth in paragraph 3 of Section 2 of Chapter One of the Civil Code.) (I append a true and correct English language translation of Articles 168- 178 of the Civil Code at Exhibit 2 to this declaration.)

18.     Wye Oak counsel's analysis of Article 219(1) of the Civil Code was performed without an understanding of the applicable law and is incorrect.

19.     It is my opinion that no court in Iraq would sustain a claim that the State of Iraq is liable for the alleged acts of the Ministry of Defense purportedly constituting breach of contract on the basis of Article 219(1).

[THIS SPACE INTENTIONALLY LEFT BLANK]

-12-

EXHIBIT 1

-13-

I declare under the penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

Executed on: 5 June 2014

Baghdad, Iraq

Dr. Ali Kadhum Aziz

EXHIBIT 1

# EXHIBIT 1

## INTERNATIONAL CHAMBER OF COMMERCE, INTERNATIONAL COURT OF ARBITRATION

## AWARD SENTENCE DATED 31 JANUARY 2003

*Greek Powder and Cartridge Company S.A.*

*vs.*

*The Ministry of Defense of the State of Iraq*

Case No. 7094/CK/AER.ACS

EXHIBIT 1

Cabinet D'avocats
# Abdel Hamid AHDAB
Docteur en Droit
Avocat à la Cour

BEYROUTH
Hazmieh – El Fayadieh –
Après bifurcation du Palais
Présidentiel – Face Grundig
Imm. Gardénia – 3ème étage
B.P. 443 Hazmieh
Tél: (05) 951827 – Fax: (05) 951973
E-mail: ahdab@destination.com.lb

PARIS
CP WEISSBERG GAETJENS ZIEGENFEUTER
CABINET D'AVOCATS
34, Avenue Marceau
75008 PARIS
Tél: 01 39 27 27 00 – Téléfax: 01 39 27 22 84

Me. Jacques Werner
13, rue de Rhône
1204 Genève

<u>Reference</u>: ICC Arbitration N0. 7094/CK/AER/ACS
Greek Powder and CARTRIDGE company S.a. (Greece) vs.
The Minister of Defense (Iraq)

In reply to your letter dated 21/9/2001 including the following documents.

1. The Procedural Order No. 24, with issue 4. My nomination.

2. The Contract of 10.11.85 between The Ministry of Defense of Iraq and The Greek Powder and Cartridge Company.

3. The Brief of Claimants. The issues concerning my mission at pages 25 to 26 (items 27 to 32).

4. The ICC award in case No. 7472 as annex L8 to the Claimants' Brief.

5. The Defendant counselor's letter dated 17 February 1999.

6. Legal pleas of the Iraqi party.

After reviewing all Iraqi laws pertaining to the issues contained in the Procedural Order, No. 24 – issue 4, please find hereinafter my legal opinion related thereto.

I

EXHIBIT 1

# Legal opinion

The Procedural order No. 24 section 4 provides the following:
*The arbitral tribunal has decided to appoint an expert-witness on the question of the legal status of the Ministry of Defense under Iraqi laws, as it appears that this question may be of relevance for deciding Claimant's request that the Respondent be designated as "The State of Iraq domiciled for this purpose in the Ministry of Defense -- Directorate of Armament and supplies" rather than as "The Ministry of Defense -- Directorate of Armament and Supplies".*

*As expert-witness it nominates Mr. Abdul Hamid El-Ahdab (curriculum vitae enclosed). He will be requested to deliver by October 12, 2001 an expert opinion on the legal status of the Ministry of Defense under Iraqi laws, as well as to be ready to be examined on his expert opinion during the hearings. In order to fulfill his mission, the expert-witness will be entrusted with the relevant parts of parties filings.*

After examining the Claimant's Brief on pages 25 and 26 (items 27 to 32) and Me. Jacques Werner's letter,

and whereas items 24 to 27 State the followings:

## Identity of the Defendant

27. The next issue that must be addressed is the question who these parties are. In the case of the Claimant there can be no doubt as to the identity of the party. ΑΝΩΝΥΜΟΣ ΕΤΑΙΡΙΑ ΕΛΛΗΝΙΚΟΥ ΠΥΡΙΤΙΟΠΟΙΕΙΟΥ ΚΑΙ ΚΑΑΥΚΟΠΟΙΕΙΟΥ or in English: GREEK POWDER AND CARTRIDGE COMPANY S.A., is a corporation, established in 1874 under Greek law with its principal office at 1 Ilioupoleos Avenue, GR-172 36 HYMETTUS, Greece, (Claimant Exhibit No. 29, Extract of Commercial Register, with translation).

28. Defendant's identity is legally more complex, but there can be no doubt that the Defendant is the STATE OF IRAQ (the Republic of Iraq) represented by the MINISTRY OF DEFENSE _DIRECTORATE FOR ARMAMENT.

2

EXHIBIT 1

29. Claimant's original Request for Arbitration clearly expressed this when it requested that the arbitration be set in motion "VERSUS the State of IRAQ, domiciled for this purpose in the Ministry of Defense – Directorate of Armament and supplies, Baghdad, legally represented". (Cf. 1st page of Claimant's Request for arbitration). For more reason, which the Claimant is not aware of, the ICC changed the heading referring to a dispute between "GREEK POWDER AND CARTRIDGE COMPANY S.A. and The Ministry of Defense of Iraq – Directorate of Armament and Supplies" when acknowledging receipt of the Request for Arbitration. (Claimant Exhibit No 12, Letter dated 13.12.1990 from ICC to PYRKAL).

30. Neither the International Court of arbitration of the ICC nor its Secretariat can simply change the identity of a Party against which arbitration is requested. Therefore, the Secretariat's reference to "The Ministry of Defense – Directorate of Armament and Supplies" must be understood as meaning "the State of Iraq, domiciled for the purpose of the arbitration in the Ministry of Defense – Directorate of Armament and supplies, Baghdad", exactly as it was initially formulated in Claimant's Request for arbitration. This is also how the arbitral Tribunal must have understood the case when it drew up the Terms of Reference on the basis of the Parties' most recent submissions. (Article 13.1 of the ICC Rules). So far the State of Iraq has not contested that it was the defendant in this case.

31. What appears to be an exercise in belaboring the obvious, is necessary because of a fact which Claimant only learned long after its request for arbitration, in the course of the contractual settlement negotiations with Representatives of the State of Iraq. During one of these negotiations sessions the Iraqi delegation handed Claimant's counsel the copy of an ICC award issued in ICC case 7472. In the above mentioned case, an ICC arbitral tribunal decided that the State of Iraq was not a party to contracts signed by the Iraqi Ministry of Defense-Directorate for Armament and another Ministry, because of the fact that, in Iraqi internal administrative law, Ministries are independent legal persons and therefore do not directly bind the State. (Claimant Exhibit No. L8, Interim Award in case No. 7472 dated January 16, 1995).

32. Not only did the Respondent inform Claimant of this award; its counsel also expressly stated in his letter of February 17, 1999 to the Arbitral Tribunal that:

This is not possible (obtaining an award by consent) without an amicable settlement of the dispute, involving the Government of Iraq. The reason is that the Ministry of Defense enjoys distinct identity. The Government of Iraq would therefore have to enter into the Arbitration proceedings in [to] order for such a settlement to be effective and binding on the Iraqi Government.

(Claimant Exhibit No. 30, Letter of February, 1999 from Counsel for Defendant to the Arbitral Tribunal).

3

EXHIBIT 1

Therefore the object of this legal opinion based on Iraqi law *is*:

1- The legal status of the Ministry

2- Is the outcome of the Arbitration proceedings against the Ministry binding the State?

3- Is the State liable for contracts entered into by ministries? And under which conditions?

4- Is it possible to file a lawsuit against the State if the contract was signed with a ministry?

5- Has the State the right to be domiciled in one of its ministries? And what are the legal consequences related thereto?

The answer to these five points under Iraqi law resides in the following issues:

1- The concept of the State under Iraqi law.
2- The concept of the ministry under Iraqi law.
3- The relation between the State and the present claim.
4- The consequences.

In light of the preceding, the five points object of the present opinion will be answered as follows:

## First – The concept of the State under Iraqi law

### 1- History

Since the creation of the world, human being felt the need to regulate his existence and to have a leader to organize people. Therefore, the concept of leadership and organization preceded the concept of state.

When boundaries were created between grouping of people, the need for a government started developing to reach the constituent conditions of a state that are a nation, a people and a government.

4

EXHIBIT 1

The general political situation that prevailed in Iraq since the beginning of their dynasties was the presence of many independent cities forming a state having there own boundaries and governing family with particular rules and regulations[1].

The royal system has always existed until 1958. The famous King Hamourabi was reputed for collecting the laws and codifying them under the famous Code of Hamourabi comprising 283 articles encompassing various aspects of life. For the administrative matters, Hamourabi adopted a centralized system and made his governors reporting to him and to the capital Babel. King Nabuchodonosor was in charge of the palace in southern Babel which became the place of his government[2].

## 2- The modern concept of the state

The state is a body of administrative and political systems and its existence depends upon the political distinction between the governing class and the non-governing one. When a group of individuals seize the largest force of a particular category of people, such social category will form thereafter a state[3]. In such kind of state, rules must be established for the administrative and political affairs. The constitution determines the various departments of the administration and the nature of the political regime[4]. The powers of the head of the state vary depending upon the form of the government whereby in a presidential regime the executive powers are centralized in the head of the State, and he is the head of the executive power, whereas in a parliamentary regime, his powers are less prominent[5].

Although article 8 of the Iraqi Constitution of 1970 provides about decentralization, article 37 also provides about the political centralization by stating that "the Council of the Revolution is the highest authority of the State".

It results from such article that the Council of the Revolution represents the State for being the highest authority, carries out executive and legislative powers as well by issuing general rules called law or regulations with force of law as per article 42 (a) of the 1970 Constitution and is presided by the President of the Republic by virtue of article 38 (a) of the Constitution.

[1] Doctor Amer Suleiman- Sides of ancient Iraq civilization- Irak History- 1983

[2] Doctor Sami Said Al Ahmad- The dynasty of Babel- Irak 1983.

[3] Mounzer Al Chaoui- The Constitution and the Institutions in Irak- p. 27/28 –1966.

[4] Art. 8 of the Iraqi Constitution provides that "the Republic of Iraq is divided in decentralized administrative units.

[5] Principles and rules of administrative law – Doctor Ali Mohamad Badir – Doctor Issam Abdel Wahab Al Berzenji – Doctor Mehdi Al Salami – University of Bagdad – College of Law 1993 – p. 77.

5

EXHIBIT 1

## Second – The concept of the ministry under Iraqi law

### 1- Meaning of the term "Ministry"

The term "Ministry" means one of the ministries, and at the same time means the government, which is a collective body having its proper powers independently of the powers of the head of State. The Council of Ministers is the authority that takes the major resolutions collectively, and when the ministers convene under the chairmanship of the Prime Minister, it is called Council of the Ministries; whereas, when the ministers convene under the presidency of the President of Republic, it is called Council of Ministers [6].

The head of the "ministry" is the "minister" who is the highest authority of one of the major units that constitute the executive power of the State [7]. The first time that the term "ministry" was used in Iraq was in 1921, year of its independence and the promulgation of its Constitution.

### 2- The legal significance of the "Ministry" before 1970

The ministry in Iraq is an instrument of government and one of the constituent elements of the executive power in addition to the Council of the Revolution and the President of Republic, similarly to the executive power after the Constitution of 1970.

The ministry was the body that comprises the persons in charge of the executive power affairs [8]; thereafter the source of power became centralized in the person of Abdel Karim Kassem, after the change of regime from royal to republican subsequently to the revolution of 14 July 1958, who cumulated the positions of the chief commander of the armed forces, the prime minister and the minister of Defense, bearing in mind that the council of ministers has exercised both the executive and legislative powers [9].

---

[6] Doctor Mounzer Al Chaoui – Concept of the State – Publications of legal studies – Bagdad 1981.

[7] The simplified Arab Encyclopedia - Dar Al Nahda – Lebanon for publishing – Beirut, Lebanon 1987.

[8] Part 4 of the Constitution of 1925.

[9] The general Theory of the Iraqi constitutional law. Doctor Ihssan Al Moufariji – Doctor Kotran Nehme – Doctor Raad Al Jaddeh – Ministry of the High Education and scientific research -- University of Bagdad – College of Law 1990 – p. 358.

6

EXHIBIT 1

After the Revolution of 8 February 1963, the Constitution was published on 4 April 1963. Such Constitution did not define the powers of the government since the National Council of the Revolution was the supreme authority holding solely the political power[10].

On 22 April 1964, law number 61/1964 concerning the National Council of the Revolution was issued confirming the first announcement of the military coup d'état of 18 November 1963 which designated the President of the Republic the holder of the power, and the Constitution was cancelled subsequently to the cancellation of the Council of the Revolution. Such act was considered by many as a coup d'état against the constitutional institutions in Iraq for reason that said Council was a major element in the administrating of power[11].

On 29 April 1964, the temporary Constitution was published by virtue of which the President of the Republic, the government and the Council of National Defense exercised the authority. Article 65 of said Constitution defined the government as "the highest executive and administrative body of the State."

On 17 July 1968, a popular revolution lead by the Arab Socialist Baath party, and the Council of the Revolution was formed; the power was shared by the Council of the Revolution, the President of the Republic and the ministries. And by virtue of article 62 as amended of the Constitution of 21 September 1968, the government remained the executive and administrative body composed of the President of the Republic and the ministries.

On 16 July 1970, and following the appointment of a commission by the Council of the Revolution to prepare the project, the Constitution was published by the Council of the Revolution number 792[12].

Part 4 of said Constitution defined the institutions of the Republic of Iraq which are: the Council of the Revolution, the National Assembly, the President of the Republic, the Council of Ministries and the Judiciary.

In addition to its legislative power, the Council of the Revolution has also executive powers described in article 44 (4) concerning the control and supervision of the ministries and the governmental administrations acts, and to convene the ministries to discuss their ministries affairs, presided by the President of the Republic, as per article 38 (a) of the Constitution.

---

[10] Doctor Mounzer Al Chaoui – supra – p. 164.

[11] Doctor Mounzer Al Chaoui – supra – p. 184.

[12] Iraqi Facts – Issue 1900 – 19 July 1970.

7

EXHIBIT 1

### 3- The Ministry under the temporary Constitution number 792 issued on 16 July 1970 – The executive power

The Council of Ministers is composed of the Prime Minister and his assistants, the ministers[13]. Such Council is the executive and administrative body presided by the Prime Minister by virtue of article 63 (g) of the Constitution.

If the ministry, as commonly admitted under the Constitution has a homogeneous administrative position in administrative matters of the entire government and carries out such activities in the name and for the government[14], and belongs to the body of the government either through its budget, which is a part of the budget of the government, or with regard to its liability resulting from its faults[15], the Iraqi legislator considered that the Council of Ministries and each ministry are independent legal persons as provided in Law Number 50 of 4 April 1964 and according to the Statement number one issued from the Council of the Revolution and as proposed by the Prime Minister and approved by the Council of Ministers. Such Statement was issued after the February 1963 Revolution and is as follows:

> " Such awakening of our people and army with the purpose of
> "continuing the victory march of the glorious July Revolution
> "cannot but achieve two purposes: the first being the
> "national reunification of our people; the second, being the
> "participation of the people in the directing and managing of
> "the power. "

Based on the above-mentioned Statement, the Law Number 50 of 1964 known as the Executive Power Law was promulgated.

Article 1, paragraph 2 stipulates:

> "The Council of Ministries and each ministry is a legal
> "person having all rights contained in the Civil Code and
> "other laws. and each one is considered as having the
> "significance of the term government. "

---

[13] The Council of the Revolution, Resolution number 83/1991 as amended by Art. 61 of the temporary Constitution of 1970.

[14] Kamal Al Ghali – The general Administration – Damascus 1975 – 1976 p. 70.

[15] Doctor Abdel Farrah Hassan – Principles on Koweiti law – Dar Al Nahdah – Beirut 1969 p. 83.

8

EXHIBIT 1

After reviewing "the Iraqi facts", the gazette that published the laws issued by the Council of the Revolution from 1964 until 1987, as well as the "law review" since 1988 until 2000 which replaced the "Iraqi Facts", there is no indication that article one, paragraph two of Law Number 50 of 1964 was amended, which means that the ministry is still considered as a legal person having the rights defined in the Civil Code and other laws.

## Third: The relation between the State and the present claim

The constituent elements of a State are the human factor, the territory and the executive power or government.

In Iraq, the Council of the Revolution is a constituent element of the State headed by the President of the Republic:

> "The President of the Republic is the head of State and the "commander in chief of the armed forces, and assumes the "executive power directly or by the intermediary of the "Council of Ministers [16]."

The above text indicates that the President of Republic cumulates the legislative and executive powers. The legislative power is materialized by signing and promulgating the laws and by proposing projects of law. The executive power means to perform the governmental and administrative duties. This was confirmed by the Council of

Revolution's resolution number 83 dated 23 March 1991 which amended article 61 of the Constitution [17] and became final after the President of Republic having occupied directly the position of Prime Ministry.

It appears from the contract, object of the claim, that the contract is entered into between the Claimant and the Ministry of Defense which is a legal person (personne morale) by virtue of paragraph two of article one of Law Number 50/1964, which does not mention the term State.

And if the acts of the state, as commonly admitted, are characterized by the sovereignty "which are those carried out by the government due to the fact that it is a governing power not an administrative one [18]", therefore it cannot perform the same acts that individuals perform such as commercial contracts. The situation is not the same in Irak since commercial activities are included in the State duties as stipulated in the Iraki Code of Commerce:

---

[16] Article 57 (a) of the Constitution.

[17] Iraqi Facts (official gazette) 3347- 1/4/1991 p. 42.

[18] Supreme court No. 1948/h/65 -- 9/5/1966 -- Pr. Diah Khattab in Summary of Code of Procedure -- Bagdad -- 1973 -- p. 139.

9

EXHIBIT 1

> "The commercial activities performed by the State are within
> "its main obligations in order to assure the commodities and
> "services to the citizens [19]."

The State of Iraq is represented by the President of Republic, who is the head of the Council of the Revolution and assumes the executive power either directly or through the Council of Ministers, and is a legal entity [20]. Therefore and based on the above, the State may be a party in commercial contracts, the same as for individuals, and is represented by its representative designated by the Constitution, who is the President of Republic. This is not the case in the contract object of the present claim for reason that the Defendant is the Ministry of Defense, that is a legal person according to paragraph 2 of Article one of Law number 50/1964.

And if the Iraki Civil Law number 40/1951 did not describe the legal person, article 48 of the same law has nevertheless stipulated as follows:

1- *The legal person must have a representative that expresses its intention.*
2- *The legal person has all rights except those inherent to the individual and within the limits set forth by the law.*
3- *The legal person is financially independent.*
4- *The legal person may perform within the limits set forth in the contract and the law.*
5- *The legal person has the right to go to court.*
6- *The legal person has a domicile; is considered its domicile the location of its headquarters.*

In addition to those characteristics, which are common to the private legal person, the public legal person has the prerogatives of the public authority in the exercise of its activities and is subject at the same time to what the public legal person is subject to [21]. The Iraqi Code of Civil Procedure as amended and promulgated under number 83 in 1969 stipulates:

> "The civil courts have jurisdiction over all legal persons and
> "individuals including the government, and are competent to
> "settle all disputes except as stipulated otherwise."

---

[19] Code of Commerce, art. 2 No. 30/1984 promulgated by the Council of the Revolution No. 328 – 15/5/1984.

[20] Civil code, art. 47 (a) number 40/1951.

[21] Principles of administrative law – Doctor Maher Al Jamboury – 1966 p. 32.

10

EXHIBIT 1

This means that Iraqi law has again confirmed that the government i.e. the Council of Ministers, along with the ministry are independent legal persons as per paragraph 2 of article one of law number 50/1964, and because the Iraqi Constitution did not provide the necessary regulation concerning the ministry or the minister, thus, and based on the ongoing general principles of administrative law, a minister is the highest administrative authority of his ministry[22]. Furthermore, paragraph one of article 48 of the Iraqi Civil Code number 40/51 stipulates that a legal entity has a representative to express its intention and such representative of said legal entity, that is the ministry, is the minister.

> *"The ministers are in charge of the affairs of their respective "ministries.*[23]

Consequently, the Minister represents the State concerning the affairs of his respective ministry which is a legal person[24]. This means that the State is considered represented by the minister in the event that his ministry is concerned and when he signs a contract in his capacity as minister. On the other hand the ministry in the absence of its respective minister's signature shall not be considered as the State's representative, although paragraph 2 of article one of the Executive Power Law number 50/1964 considers that the Council of Ministries as well as the ministries have the significance of the term Government.

With regard to the contract, object of the present claim, there is no evidence that the signatory of the contract is the Minister. The contract however has the seal of the Ministry of Defense affixed, and a signature which is not established that it is the Minister of Defense signature. To the contrary, and after examining the copy of the contract in hand it appears that the signature is the one of the chief of staff of the Ministry of Defense. Therefore, and even if the signature of the ministry is on the contract, and without identifying the identity of the signatory, this does not indicate that the minister himself has signed the contract as representative of the State. This does not imply that the Minister has presumably signed the contract as representing the State in a contract concerning the affairs of his ministry based on the fact that the Ministry is a part of the Council of Ministers, that is the government, which is a part of the State.

---

[22] Doctors Badir and Issam Al Bergenji and Mahdi Al Salami-supra – p. 159.

[23] The executive Power Law, No. 50/1964- art. 2.

[24] Doctors Badir and Issam Al Bergenji and Mahdi Al Salami-supra. p. 159

11

EXHIBIT 1

## Four : The Consequences

According to the Request for Arbitration, the State of Iraq is the Defendant, and it was mentioned in the acknowledgment receipt delivered by the ICC upon receiving the Request for Arbitration that the Defendant was the Ministry of Defense.

Such Statement was accurate since it was the Ministry of Defense that was a party to the contract. Thus, and based on the preceding and on the Request for Arbitration in which it was Stated that the Defendant was the State of Iraq, it cannot be said that the Ministry of Defense is the Defendant in the present claim. Under Iraqi law the ministry does not represent the State and is a legal person (entity) represented by the Minister who represents the State when he signs a contract concerning the affairs of his respective ministry as provided in article 2 of the Executive Power Law number 50/1964 still currently in force. Consequently the Ministry does not represent the Government except if the signatory is its respective Minister, otherwise said Ministry remains an independent person with its own financial assets separately from the financial assets of the other Ministries and those of the Government.

## THEREFORE

And, in reply to the five questions set forth above:

### I – What is the legal status of the ministry?

The ministry under Iraqi law is a legal person (personne morale ayant une personnalité juridique propre) according to article 29 of the Iraqi Code of Procedure number 83/1969 which stipulates that the government is a legal person; furthermore paragraph 2 of article one of the Executive Power Law number 50/1964 stipulates also that the ministry has the significance of a government and is a legal person.

### II – Is the outcome of the Arbitration proceedings against the Ministry binding the State?

The claim against the Ministry does not bind the State due to the fact that the Ministry is a legal person and is financially independent from the financial assets (or account) of the State that is in its turn an independent legal person according to article 47 of the Iraqi Civil Code number 40/1951 represented by the head of State i.e. the President of Iraq who is also the chief of the executive power directly or through the Council of the Ministries as per article 57 of the temporary Constitution of 1970, as amended by resolution number 567 of the Council of Revolution published in the official gazette "Iraqi Facts" number 2662 on 22/7/1973, and who is also the head of the Council of Revolution that is the highest authority of the State according to article 37 of the temporary Constitution dated 16/7/1970. However, if the Ministry is represented by the Minister who has the governmental capacity as being a member of the Council of Ministries which is a separate legal person independently from the Ministry, the outcome of the arbitration proceedings against said Ministry will bind the Government due to the fact that the one who represents the Ministry is a governmental person in charge and not and administrative one.

12

EXHIBIT 1

The Minister as a governmental person in charge represents the Government, as an independent legal person from the Ministry, and at the same time represents his Ministry which is a separate legal entity: hence, the Minister represents the Ministry and the Government.

The person in charge who has an administrative function represents only the Ministry which is a legal person independent from the Council of Ministries which in its turn is a separate legal person.

### III- Is the State liable for contracts entered into by ministries? and under which conditions?

The State is bound by the contracts concluded by the ministries when the respective Minister has signed those contracts in his capacity as in charge of the administrative and executive affairs of his respective ministry as set forth in article 2 of the Executive Power Law number 50/1964 and as per paragraph 2 of article one of the same law which stipulates that the term Ministry has the significance of the term Government. The Government is among the State institutions defined in part four of the temporary Constitution to which chapter four relating to the Council of the Ministers was added by resolution number 567 of the Council of the Revolution published in "Iraqi Facts" issue number 2662 dated 22/7/1973.

This means that it must be the respective Minister that has signed the contract in his capacity of Minister of such Ministry in order to bind the State by the contract ratified by the Ministry. Furthermore the contract must also contain a provision clearly stating that it is the Minister who signed the contract otherwise the contractual obligations will remain limited to the Ministry itself and within it financial assets.

Therefore, and since the signatory of the contract is the Chief of Staff and not the Minister, the State shall not be held liable, and the contractual obligations must be limited to the Ministry due to the fact that the signatory of the contract has an administrative function and not a governmental one.

### IV- Is it possible to file a lawsuit against the State if the contract was signed with a Ministry?

Article 47 of the Iraqi Civil Code Stated that the government is a legal person. Article 57 of the 1970 temporary Constitution amended by resolution number 567/1973 of the Council of Revolution provided that the President of the Republic is the head of a legal person. Paragraph 2 of article one of the Executive Power Law number 50/1964 stipulates that the ministry is a legal person, therefore the State is a legal person and the ministry is a separate legal person.

Consequently if the contract is signed with a ministry- which is an independent legal person with independent financial assets- the lawsuit must be filed against said ministry and not against the State which is a separate legal person: neither the status of the ministry should be assimilated to the State, nor the status of the State should be assimilated to the one of the ministry.

13

EXHIBIT 1

V- Has the State the right to be domiciled in one of the ministries? And what are the legal consequences related thereto?

Article 48 paragraph 6 of the Iraki Civil Code number 40/1951 provides that the legal person has a domicile and considers that the place of domicile is where its head-quarters are located. However, that provision does not prevent any person either legal or individual to have a domicile for purpose of notification for reason that if it appears afterwards that said person has changed domicile to a known location, he could be served at the place indicated by the party that requests the notification. And if the new domicile is unknown, the serving notice may be by announcement published in two daily newspapers, according to article 21 (1)(2) of the Iraqi Code of Procedure number 83/1969.

In any event no legal person can replace another legal person unless one of them is doing it according to article 3 of the Code of Procedure, and due to the fact that:

(i) the Government is a legal person, and the ministry is another legal person, thus no one of these two entities can be served in lieu of the other, and this by virtue of article 48 (1) of the Iraqi Civil Code number 40/1951 which provides that every legal person must have a representative to express its will, and (ii) due to the fact that the State is represented by the President of Republic according to article 57 as amended of the temporary Constitution of 1970, and the minister is in charge of the ministry's affairs as provided in article 2 of the Executive Power Law number 50/1964. Therefore notifying one of those entities instead of the other is in violation of Iraqi laws eventhough if one of those entities has elected domicile at the location of the other.

The Code of Civil Procedure number 83/1969 applies also on the public legal person as set forth in article 25 that provides: "The civil courts have jurisdiction over legal persons (entities) as well as over individuals including the Government unless it is stipulated otherwise". Doctor Maher Jabouri (supra) in his book " Principles of Administrative Law" page 197 declares that there is no provision in the Iraqi legal system including the Constitution, laws and regulations, that prevent the civil courts to oversee the acts of the public administration except those that are closely related to administrative acts; this is not the case.

Hoping that the above answers your queries.

I stand ready to clarify any of the parties' questions.

Sincerely yours,

Abdel Hamid El-Ahdab
Attorney at Law

Beirut, 17/10/2001

14

EXHIBIT 1

**EXHIBIT 2**

**English Language Translations of Pertinent Excerpts
of the Constitution of Iraq and Iraqi Statutory Laws**

**A.  Iraqi Constitution**

Article 130

**B.  Law of Executive Authority (Law No. 50 of 1964)**

Paragraph Two, Article 1 of the Law of Executive Authority

**C.  Iraqi Civil Code (Law No. 40 of 1951)**

1. Article 47
2. Article 48
3. Articles 168 – 176
4. Articles 186- 201
5. Articles 202-203
6. Articles 204-217
7. Articles 218-220

-15-

EXHIBIT 1

## A.  CONSTITUTION OF IRAQ – EXTRACT OF ARTICLE 130

### True and Correct English Translation

Article 130

Existing laws shall remain in force, unless annulled or amended in accordance with the provisions of this Constitution.

EXHIBIT 1

-17-

**B.  LAW OF EXECUTIVE AUTHORITY (LAW NO. 50 OF 1964) – EXTRACT OF PARAGRAPH TWO, ARTICLE 1**

**True and Correct English Translation**

Paragraph Two, Article 1:

(1)     The Cabinet and each Ministry of the Ministries has a legal personality to exercise the rights stipulated in the Civil Code and other Laws and each of them shall be regarded as the meaning of the word ·'Government".

EXHIBIT 1

## C. **CIVIL CODE OF IRAQ (LAW NO. 40 OF 1951) – EXTRACTS OF ARTICLE 47, ARTICLE 48, ARTICLES 168-176, ARTICLES 186-201, ARTICLES 202-203, ARTICLES 204-217, ARTICLES 218-220**

### 1. **True and Correct English Translation: Article 47**

Article 47

Juristic persons are:

(a)    The State.

(b)    The administrations and the public institutions which by virtue of the law are granted a juristic personality independent of the State's personality in accordance with the conditions laid down herein.

(c)    The districts, municipalities, and villages which are granted by the law a juristic personality in accordance with the conditions laid down therein.

(d)    Religious sects (denominations) which the law grants a juristic personality in accordance with the conditions laid down therein.

(e)    Dedications (waqfs).

(f)    Commercial and civil companies except those of which have been excluded by a provision in the law.

(g)    Societies which have been incorporated in accordance with the provisions of the law.

(h)    Every group of persons or combination of property which is granted a juristic personality by the law.

### 2. **True and Correct English Translation: Article 48**

Article 48

(1)    Every juristic person shall have a representative to express its wish.

(2)    A juristic person shall enjoy all rights other than those inherent in the nature of the natural person to the extent determined in the law.

(3)    A juristic person has its own patrimonium.

-18-

EXHIBIT 1

(4)     A juristic person has the capacity of payment within the limits set down in its deed of incorporation and which are prescribed in the law.

(5)     A juristic person has the right of litigation.

(6)     A juristic person has a domicile which is deemed to be in the place wherein lies its head office (administrative center); the companies which have their head offices abroad and have business in Iraq, their head office in regard to the bylaws will be deemed to be the place wherein lies its business management in Iraq.

### 3.  True and Correct English Translation: Articles 168 – 176

(3)     Contractual Responsibility (Warranty of the Contract)

Article 168

If it is impossible for an obligee of a contract to perform his obligation specifically he will be adjudged to pay damages for non-performance of his obligation unless he establishes that the impossibility of the performance was due to a cause beyond his control; the adjudication will be the same if the obligee has delayed (was late in) the performance of his obligation.

Article 169

(1)     If the compensation (damages) has not been estimated in a contract or in a provision of the law it will be assessed by the court.

(2)     The damages shall be in respect of every obligation which arises from the contract be it an obligation of conveyance of property, a benefit or any other right in rem, or an obligation to do or to abstain from doing an action and includes the loss of and the lost profit suffered by the creditor on account of loss of or delay in receiving the right, provided that this was a natural result of the failure or delay by the debtor to perform the obligation.

(3)     Where the debtor has not committed any cheating (fraud) or a grevious fault the compensation may not exceed the loss suffered or the amount of the lost profit which had been normally anticipated at the time of contracting.

Article 170

(1)     The contracting parties  may fix in advance the value of the damages (compensation) by a stipulation in the contract or in a rider (subsequent agreement) in which case the provisions of Article 168, 256, 257 and 258 must be observed.

-19-

EXHIBIT 1

(2)    The contractual damages will not accrue (be due) if the debtor has established that the creditor did not suffer any damage; the (value of the) compensation may be reduced if the debtor has established that the assessment was excessive or that part of the original obligation has been performed; any agreement which is contrary to this paragraph shall be null and void.

(3)    Where the damage has exceeded the sum of compensation agreed (contractual damages) the creditor may not claim more than said value unless he has established that the debtor has committed deception or a grevious fault.

Article 171

Where the object of the obligation is a sum of money which was known at the time the obligation arose and the debtor delayed the payment thereof he shall be obligated to pay to the creditor by way of damages for the delay a legal interest at the rate of four per cent in regard to civil matters and five per cent in respect of commercial matters; this interest will commence from the date of filing a judicial claim in respect thereof if the agreement or the commercial usage has not fixed a different date for the running of the interest save in all cases where the law has provided otherwise.

Article 172

(1)    The contracting parties may agree on another rate of interest (other than those mentioned in the preceding Article) provided that it shall not exceed seven per cent; where the parties had agreed on a higher rate (of interest it shall be reduced to seven per cent and the surplus which has been paid must be refunded.

(2)    Every commission or benefit (advantage) of whatever kind stipulated by the creditor such as when it is added to the agreed interest will exceed the aforementioned maximum rate will be deemed to be covert interest and is reducible if it has been established that said commission or benefit had no consideration represented by an actual service which the creditor would have rendered nor by lawful benefit.

Article 173

(1)    In order for the interest – legal or contractual – to fall due the creditor will not be required to establish that he had suffered injury as a result of the delay.

(2)    The creditor may claim a complementary compensation to be added to the legal or contractual interests if he has established that the damage which exceeds the interests was due to cheating or gross fault committed by the debtor.

(3)    But where the creditor is claiming his right has caused the lengthening of the duration of the dispute through his fault the court may

-20-

EXHIBIT 1

reduce the interests – legal or contractual – or will not adjudge the payment thereof at all in respect of the period of the lengthening of the dispute without justification.

Article 174

Interest may not be charged on the outstanding interest and in no case may the total of the interest received by the creditor be more than the principal sum without in all cases prejudice to the commercial rules of custom and usage.

Article 175

The legal rate of commercial interest charged on current accounts will vary according to fluctuations of the local market applicable; capitalisation (the method of computing compound interest) is effectuated on current accounts according to the commercial usage.

Article 176

The Gregorian calendar will be adopted when computing interest.

**4.  True and Correct English Translation: Articles 186- 201**

Chapter 3 – Unlawful Acts

Section (i) Responsibility for Personal Acts

(1) Unlawful Acts Against Property

Article 186

(1)     A person who willfully by trespassing has directly or indirectly caused damage to or decrease in the value of the property of another shall be liable.

(2)     Where two persons – a perpetrator and an abettor – are involved in committing the damage, the one who acted willfully by encroaching shall be liable; where both are liable the liability will be joint and several.

Article 187

(1)     A person who without (lawful) right has demolished an immovable belonging to another person the latter is vested with an option: leave the rubble to the former and claim from him the value thereof standing (built up) as well as reparations for the other injuries; or deduct the value of the rubble from the value of the immovable standing (built up) and in the

-21-

EXHIBIT 1

Case 1:10-cv-01182-RCL   Document 105-1   Filed 06/06/14   Page 36 of 43

latter case take the rubble and claim from him the balance (difference in value) and reparations for the other injuries.

     (2)    But where the perpetrator (destroyer) has reinstated the immovable to its original state which existed before the demolition and paid reparations for the other injuries his liability will be discharged.

## Article 188

A person who without lawful cause has cut a tree in the garden of another person the owner (of the tree) has an option: either to claim the value of the tree standing and reparations for the other injuries and leave (give) the tree cut to the perpetrator; or to deduct the value of the cut tree from its value when standing and take the cut tree and claim the remaining balance and reparations for the other injuries.

## Article 189

A person who has cheated another person shall be liable on the damage (injury): if a person told the market people, "This minor is my son sell him goods as I have permitted him to deal in trading" and it later transpired that the boy is the son of another person, the market people may claim from him the price of the goods sold to that boy and damages for the other injuries.

## Article 190

     (1)    A person who has damaged the property of, another person alleging that it is his own property shall be liable on that which he has damaged.

     (2)    If however the damage was permitted by the owner the perpetrator will not be liable.

## Article 191

     (1) A minor - rational or irrational – or any one having his status who has damaged the property of a third party will be liable from his own funds (property).

     (2) Where it was impossible to obtain the reparations from the assets of he who has done the damage (the perpetrator) - be he an imprudent (irrational) minor or insane - the court may order the natural guardian the curator or the selected guardian to pay the sum of the reparations who may have recourse for the sum paid against he who has committed the injury (perpetrator).

-22-

EXHIBIT 1

(3) In assessing the fair reparations for the damage the court must take into consideration the situations of the litigants.

USURPATION

Article 192

The property usurped must be restituted in kind to its owner at the place wherein it was usurped if it is existing; if the owner of the property has casually met the usurper who had with him the usurped property at a different place he may if he so wishes have the property restituted in that place, but if he demands restitution at the place of usurpation the expense of moving it and the costs of providing for its restitution will be borne by the usurper which thing will be without prejudice to reparations for the other injuries.

Article 193

The usurper will be liable if he has expended, destroyed, or lost the property usurped or where it has perished totally or partially without encroachment on his part.

Article 194

(1)    If the thing usurped has changed while in possession of the usurper the usurpee may if he so wishes recover the thing usurped in kind and claim reparations for the other damages or leave (abandon) the thing usurped and claim reparations from the usurper.

(2) The usurper who has changed the thing usurped in such a manner which changed its name (nomenclature) will be liable and will keep the thing; he who has usurped the wheat of a third party and sowed it in his land will be liable for the wheat and will keep the crop.

(3) Where the usurper has changed some description of the thing usurped by adding to it something from his own property the usurpee will have the option if he so wishes to give the usurper the value of the addition and take back the thing usurped in kind and claim the other reparations or to abandon the thing and claim from the usurper.

Article 195

If after the usurpation the value of the thing usurped has diminished (depreciated) the usurpee has no alternative but to accept it in its existing state without prejudice to his right to reparations for the other injuries; the usurper shall however be liable if through his act or use the thing usurped has depreciated.

-23-

EXHIBIT 1

Case 1:10-cv-01182-RCL   Document 105-1   Filed 06/06/14   Page 38 of 43

Article 196

The accessories of the thing usurped are deemed to be usurped like it and the usurper shall be liable if they have perished even without encroachment on his part.

Article 197

Where the thing usurped is an immovable the usurper is under an obligation to restitute it to the owner together with the comparable (true) rent; the usurper shall be liable if the immovable has suffered damage or has depreciated even without encroachment on his part.

Article 198

(1)     The usurper of a usurper has the same status as that of the latter: where any person has usurped the property usurped from the (original) usurper and damaged it, or where it sustained damage while in his possession the usurpee (owner of the thing) has the option if he so wishes to claim from the first usurper or from the second usurper; he may claim part thereof from the first usurper and the other part from the second usurper; the first usurper who has paid may claim from the first usurper but the second usurper may not if he has paid claim from the first usurper.

(2) Similarly where a third party has damaged the thing usurped which is in possession of the usurper the usurpee will have the option of either claiming from the usurper who may in turn claim from the third party who did the damage, or he may claim from the person who did the damage where the latter may not claim from the usurper.

Article 199

Where a usurper of the property has restituted the thing usurped to the latter usurper his liability only will be discharged and if he has restituted it to the usurpee the liability of both usurpers will be discharged.

Article 200

Where the usurper has disposed against or without a consideration of the thing usurped which sustained total or partial damage the usurpee has the option to claim from whomever he chooses; the disposal of the usurper shall be valid if he has discharged his liability in respect of the thing usurped; if the transferee of the thing usurped has discharged his liability he will claim from the usurper the replevy warranty in accordance with the provisions of the law.

EXHIBIT 1

Article 201

A situation which is equal to usurpation in debarring disposal is tantamount to usurpation: a depositary who denies the deposit (entrusted into his care) is tantamount to a usurper; if after denial the deposit has perished while in his possession without encroachment he shall be liable.

**5.** **True and Correct English Translation: Articles 202-203**

(2) UNLAWFUL ACTS COMMITTED ON PERSONS

Article 202

Every act which is injurious to persons such as murder, wounding, assault, or any other kind of inflicting injury entails payment of damages by the perpetrator.

Article 203

In case of murder and in case of death resulting from wounds or any other injurious act renders the perpetrator liable to pay compensation to the dependents of the victim who have been deprived of sustenance on account of the murder or death.

**6.** **True and Correct English Translation: Articles 204-217**

(3) PROVISIONS COMMON TO UNLAWFUL ACTS

Article 204

Every assault which causes other than the injuries mentioned in the preceding Articles entails payment of compensation.

Article 205

(1)     The right to compensation also covers moral injury: any encroachment (assault) on the freedom, morality, honour, reputation, social standing, or financial position (credibility) of a third party renders the perpetrator liable for compensation (damages).

(2)     Damages may be adjudged to spouses and the next of kin of the family in respect of the moral injury sustained by them as a result of the victim's disease.

(3)     Damages for moral injury do not pass to a third party unless its value has been determined pursuant to an agreement or a final judgment.

-25-

EXHIBIT 1

Article 206

(1)     The civil damages shall not be prejudicial to imposition of the criminal penalty if its elements have been satisfied.

(2)     The court will decide the civil liability and the amount of the compensation (damages) without being bound by the principles of criminal liability or by the judgment rendered by a criminal court.

Article 207

(1)     In all cases the court will estimate the damages commensurately with the injury and the loss of gain sustained by the victim provided that the same was a natural result of the unlawful act.

(2) Deprivation from (loss of) benefits of things will be included in the estimation of the damages and the liability may cover the wage (fee/remuneration).

Article 208

Where it is not possible for the court to estimate the damages adequately it may reserve a right to the victim to apply within a reasonable period for reconsideration of the estimate.

Article 209

(1)     The court will determine the method of payment of the damages according to the circumstances: the damages may be payable in instalments or as a revenue in the form of a salary in which case the debtor may be required to provide a security.

(2)     The compensation (damages) will be estimated in cash: the court may however depending on the circumstances and upon application being filed by the victim (injure) order that the situation be reinstated to its original state or adjudge performance of a certain specified matter or restitution of a similar thing of the fungibles by way of compensation.

Article 210

The court may reduce the sum of or refuse to adjudge payment of any compensation whatsoever if the injured person has contributed through his fault to causing or aggravating the injury or had worsened the debtor's situation.

-26-

EXHIBIT 1

Article 211

A person who has established that the injury had arisen from a cause beyond his control such as by an act of God, an accident, a force maieure, by the act of a third party or the fault of the injured himself shall not be liable on damages unless there is a provision (in the law) or an agreement otherwise.

Article 212

(1)     Exigencies permit (legitimise) prohibitions and will be assessed commensurately with the need for them.

(2) He who in legitimate self defense or in defense of a third party had caused injury shall not be liable provided in so doing he does not use force more than is needed (for the defense) otherwise he will be obligated to pay compensation (damages) where the principles of equity must be observed.

Article 213

(1)     The lesser of two evils will be chosen and in case of conflict of two evils the evil with greatest injury will be considered (taken into account): the greater injury will be eliminated by the lesser injury; but an exigency (the compelling circumstances) will not nullify completely the right of a third party.

(2)     He who has caused injury in order to protect himself or a third party against a much greater impending danger than the injury he has caused shall not be liable except on the compensation which the court deems appropriate.

Article 214

(1)     Personal injury will be tolerated (allowed) to ward off the public injury.

(2)     A person who has demolished a house without permission from the owner in order to avoid (ward off) the breaking out of a fire in the quarter (vicinity) and the fire was actually extinguished there (at that place) shall not be liable for damages if the demolition was in compliance with an order by the competent authorities but where the demolishing was of his own accord he shall be liable to pay a suitable compensation.

Article 215

-27-

EXHIBIT 1

(1)      The act will be attributed to the perpetrator not to the commander (orderer) unless he was under duress where only the compelling coercion will be considered as duress in the actual disposals.

(2)      A public official however will not be responsible for his act which caused injury to a third party if such action was performed in compliance with an order issued to him by his superior where compliance with such order was incumbent or believed to be incumbent; he who has caused the injury will have to establish that he believed that the act performed by him was lawful by adducing proof that in so doing he observed caution and that his belief was based on reasonable grounds.

Article 216

(1)      No ab initio or retaliatory injury: the injury will not be eliminated by inflicting a similar injury; a person who has suffered a grievance shall not inflict the same grievance as he had suffered on another person.

(2)      Where a person has destroyed the property of a third party to counter said party's destruction of his property each party may claim for the damage suffered from the other party: a person who has been cheated accepted counterfeit money from a third party may not dispense said (counterfeit) money to a third party.

Article 217

(1)      The several persons responsible for an unlawful act will be jointly liable in their obligation to pay damages for the injury done without distinction between the perpetrator, the accomplice, and the instigator (incitor).

(2)      He (of the foregoing persons) who has paid the entire compensation may claim from the others such part which is assessed by the court according to circumstances and the gravity of the encroachment committed by each one of them; if it was not possible to determine the extent of the responsibility of each one of them the liability will be apportioned among them equally.

**7.  True and Correct English Translation: Articles 218-220**

(1) RESPONSIBILITY FOR THE ACTS OF A THIRD PARTY

Article 218

(1)      The father and then the grandfather shall be obligated to compensate the injury caused by a minor.

-28-

EXHIBIT 1

Case 1:10-cv-01182-RCL   Document 105-1   Filed 06/06/14   Page 43 of 43

(2)    The father or the grandfather will be able to waive his responsibility if he has established that he had exercised the duty of control (over the minor) or that the injury would have taken place even where he had performed said duty.

Article 219

(1)    Government municipalities and other institutions which perform a public service as well as every person who exploits an industrial or commercial enterprise are responsible for the damage (injury) caused by their employees if the injury resulted from an encroachment committed by them in the course of their service.

(2)    The employer will be able to relieve himself of the responsibility if he establishes that he had exercised the necessary care to prevent the injury or that the injury would have happened had he exercised the necessary care (caution).

Article 220

A person who is responsible for the action of a third party is entitled to claim from such third party that which he had paid (in compensation).

EXHIBIT 1